Good morning. May it please the Court, Sarah Bohr from Atlantic Beach, Florida, representing the appellant Liz Negron. In this Social Security case, the ALJ denied the claim based on a finding that Ms. Negron could perform light work, that is, she could stand and walk for six hours out of an eight-hour day. In so finding, the ALJ rejected three medical opinions contained in the record, all consistently stating and indicating that she could not perform the standing and walking required of light work. Dr. Parker, an orthopedic surgeon, the Dr. Nicolosi, a treating pain management specialist, as well as Dr. Skeen, the consultative doctor who found moderate limitations in standing and walking. We're going to focus this morning I'd like to focus on the treating physician opinion as well as the judge's light work finding. In rejecting the ALJ's, the opinion of Dr. Parker, the ALJ focused on isolated parts of the record and failed to consider the evidence as a whole. For example, he never mentioned the March 2012 MRI, which supports Dr. Parker's opinion, which showed herniated nuclei. Could you give me a hand with something? The ALJ denied the claim, the magistrate judge upheld the claim, and then the district judge reverted to the ALJ, is that correct? That's correct. And we are on what level of review, just of the district court opinion? Yes, we are reviewing the district court opinion, that's correct. The no vote? We are looking at whether the ALJ's findings . . . go back and look at the ALJ's decision itself. It's another review, yes. Okay, so the magistrate judge can give us a map if we found that analysis persuasive, but just kind of standing on its own, right? Yes, it's persuasive, it's not binding in any way on your decision. So Dr. Parker cited this MRI from March 2012 showing herniated nucleus puposis, that it encroached on the left S1 nerve root. Wasn't there a later MRI? Yes, there was. There was a later MRI that was a year and eight months later, in November of 2013, but that MRI also showed abnormalities. It showed bulging discs. Dr. Parker stated that she had a herniation at L5-S1, but there was an MRI that indicated there was no herniation at L5-S1. There is an MRI from March of 2012 that found that. What contradicted Dr. Parker's finding? Well, the findings were different. They did not find the herniated nucleus puposus, but they found this bulging. They also found that it affected the forama. Didn't the district court reject the treating physicians, not so much because of any specific thing, but because there were contradictions between their notes and their findings in each of them, particularly Nicolasi's, but some in Parker as well. That is, that there were no physicians who spoke consistently about this. Isn't that the ground on which he rejected it? We would contend that the ALJ selectively cited evidence from the record, didn't cite everything. Dr. Parker was very specific in this assessment that's at issue. He listed several findings, not just the MRI. He also listed that she had radiation into her left leg, that she had muscle spasms, that she had significantly reduced What I am most troubled by in this case is the question of whether there is any medical evidence by anybody that your client could do the work, that she had the residual functional capacity to do her previous work. That is, is there any doctor who said that she could do that? Now that's a question I'm going to address more from the other side, but that's my problem here, because we have held that the ALJ can't substitute his or her opinion for that of doctors if there isn't medical testimony to that effect. We would agree with you. There is nothing in the record that supports the ALJ's RFC assessment. There were two state agency single decision makers who are lay people, not medical providers, who made opinions, but those opinions were never mentioned by the ALJ, but they did find light work, and they have no weight in a social security case because they're not medical opinions. Dr. Nicolosi, who was the treating pain management specialist, found limitations which were consistent with those of Dr. Parker, which would not allow the performance of light work. And the consultative doctor, Dr. Skeen, found that she had moderate limitations in standing and walking, and we would contend that a moderate limitation in standing and walking would not allow someone to stand and walk for six hours out of an eight-hour day, which is what the ALJ found. The ALJ found she'd go back and do that kind of work. So it's our contention the evidence is actually consistent that shows she could not perform the exertional demands of light work as found by the ALJ. I think it's important, you mentioned the MRI, and there was a different MRI, a new MRI, in November of 2013. Nobody analyzed it. The hearing was in November 2013, so the MRI came in right before the hearing. It was one of the last pieces of evidence in the record, but it was reviewed by Dr. Nicolosi. And Dr. Nicolosi saw the MRI, and he addressed it in his medical source statement. He found the MRI supported lumbar radiculopathy, which would also, in his opinion, was she could not perform light work as well, that she could perform less than sedentary work. But this MRI had findings of, as I mentioned, disbulging. It had findings that were, that they'd actually encroached on the foramen, and it mentioned stenosis. And I would point the Court to direct your attention to the case of Burgess v. Astru, a case from the Second Circuit, 537F3-117, which had a similar MRI to the second MRI, the November 2013 MRI, and held that that MRI alone was objective evidence supported to treating physician's opinion. And we would contend that that's, that this Court should make a similar finding, that the ALJs, the MRI evidence is, even though it's not, they don't have a herniated disc, they still find abnormalities in the second MRI, which is contained in the record at page 411. I'd like to reserve my remaining time for rebuttal. Good morning, Your Honors. My name's Candace Appleton. I'm an assistant United States attorney in the Eastern District of New York, and I'm here today representing the Acting Commissioner of Social Security. As we know, the plaintiff was only 41 years old on her alleged onset date. She admittedly had a long history of back pain, up to 20 years, she told some of her doctors, treating doctors, and she also had obesity. And these were two severe impairments that were found by the ALJ. Immediately prior to her alleged onset date, in 2008, she worked, interestingly enough, in a light job, and some light jobs involved predominantly sitting and using of hand controls, and this was the job she performed as an assembler. And she left when she gave birth to her daughter. She never returned to work, and thereafter reported to some of her doctors that her career was that of a homemaker or a housewife. The plaintiff did not apply for disability insurance benefits in SSI for 4 years after her onset date until 2012, but she backdated it to 2008 when she stopped working. However, as the ALJ and the District Court correctly found... Excuse me, when you say she backdated, you mean she made a retrospective claim? Well, yes, she listed her disability onset date as 2008. Not that she misrepresented the date? She did not have a back impairment. She could have resumed her past light work as an assembler. What medical evidence to that effect is there? I can see the ALJ discounting the treating physicians because there were some inconsistencies. Let's say. Let's assume Arguendo could do that, but what medical evidence was there that she could do light work? Usually there is testimony by some doctor that says that she can. But what's odd about this case is that I don't see that testimony. Your Honor, under this circuit has held and stated that although the ALJ's conclusions may not perfectly correspond to any of the opinions, he is entitled to weigh all of the evidence available to make an RSC finding that is consistent with the record as a whole. That is mad a fiasco. But we have also held that the ALJ cannot make medical decisions. So what I want to know is where is there medical testimony that allows this conclusion? Everyone seems to say there are impediments. How great they are is hard to tell. But where does the ALJ get the conclusion that she can do the kind of sitting, standing, and so on that allows her to do the previous work? The evidence came from six examining doctors, their examination findings, and all of them consistently found that there were no abnormal findings such as motor loss, sensory loss, abnormal gait. All of them said that she was impaired. Not all of them. Dr. Ou, a sports medicine doctor, 2010, made all sorts of negative examination findings. She had normal gait, heel and toe walking, full motor strength. February 11, he made the same findings. Dr. Skeen, who said that there were some impairments, that was his opinion, but his examination findings showed normal gait. I understand that there were findings of normal gait. I understand that there were findings of normality as well as some findings of abnormalities. But what is the basis of the specific finding that with this combination of abnormalities and normalities, she could do that work? Where is that drawn from a medical opinion rather than simply from the judgment of lay people, which we have said is not enough? But we have had, in MATA, he did indicate, Dr. Steiner, there's also a doctor who did find that her only inability, Dr. Steiner, who was in fact a neurologist, that her only impediment was heavy lifting, which was consistent with the... On page 356, Dr. Steiner recommended only that she avoid heavy lifting. The consultative examiner also agreed that she needed to only avoid... One of the things she needed to avoid was heavy lifting. That she avoid only heavy lifting. And ironically, her job, I have 357, and her past work, which is the step that the ALJ found she was not disabled, was step four. And she did perform a light job, as she testified, that involved predominantly sitting and did not involve heavy lifting. So taking all the evidence together, which, you know, I don't want to be the dead horse, but we have MATA, we have Snell, where the ALJ does get to look at the entire evidence and come up with an RFC. That is their obligation. And interestingly... It's kind of unusual still that the ALJ rejected the medical testimony of all the individual doctors, including the treating physicians, and kind of melded together its own analysis. I guess, I don't think it's unusual in that he did look at their examination findings and the MRI and tried to see if they jived, which is certainly something they're permitted to do. As Calabresi points out, it's kind of as though the ALJ was making its own medical determination as opposed to adopting findings that were more substantive. That's always the interesting aspect of an RFC, and I think the case law has left great discretion into the ALJ to go through the evidence and make findings, and I think this ALJ... The magistrate judge, one, there were three different grounds for his holding. One had to do with the obesity, another one had to do with the treating physician, but one of the grounds that the magistrate judge went on was that there wasn't a basis for the residual capacity finding. And how did the district judge treat that analysis of the ALJ? I think he treated it in the way that I just discussed, that the ALJ did, in fact, go through examination findings from six different doctors that were medical experts. One, Dr. Steiner, we said made an opinion about heavy lifting. Actually, the consultative examiner also talked about heavy lifting. But I think our plaintiff's big concern was the concept that the ALJ relied on a single decision maker, which is totally off base. I mean, that is what, unfortunately, Judge Tomlinson came up with, and I can tell you, in this case, if, in fact, the ALJ had relied on a single decision maker, so quickly, you couldn't imagine it, he did not rely on the single decision maker. The fact that that just coincided with his RFC, every file for Social Security has a single decision maker in it, and just because it jibes with the RFC, it cannot be a basis for remanding under the assumption that perhaps they relied on that decision from a non-medical person. This record is quite replete with examination findings and some opinions, and I don't think the ALJ was off base to make the RFC decision that he did, in fact, make. And it just so happened at step four that that RFC, she was 41 years old, there were other evidence about her credibility, she did not use pain medication, she did not use a cane, physical therapy was effective, a lumbar injection. She sees a considerable amount of decline. In 2008 and 2010, and then since 2010, when she may not be covered by a statement, if you read what the different doctors say, it's not a static situation. I'm not sure what one makes of that. I assume nothing is static, but we see by the MRI, interestingly enough, that L5 S1, there was improvement in that area. Also, you know, there's a year time period that we have to prove the durational requirement. This is 2013 when these doctors made these decisions. That was more than five years after the alleged onset date. There were large gaps in treatment. She did not pursue treatment regularly. She was a homemaker, she did a reasonable amount, took care of a young child during this time period, took care of her home, did certain daily activities that were just not consistent with totally disabling back pain for a 41-year-old woman whose past work was sitting. We'll hear the rebuttal. Thank you. Ms. Negron certainly obtained consistent treatment starting in March 2012 and continuing through the hearing in November 2013. And regarding the durational requirement, Dr. Parker specifically referenced the 2012 MRI, said she had not yet obtained maximum medical improvement. So certainly the condition would have continued, and the evidence indeed shows that it did. The ALJ in the decision at page 16 cites the basis for the RFC fund. You asked about that. What is the basis? And so at the top of page 16 of the record, the ALJ says she can do the claimant can do light work with some postural limitations based on objective evidence of diffuse degenerative disc disease resulting in the pharma and central stenosis and physical findings of limited range of motion, spasm, tenderness, requiring treatment with epidural injections. But the ALJ fails to mention many other positive findings that are in this record. So that's one of the concerns we have, is that, yes, the ALJ extrapolated the RFC from all of the different evidence, but he selectively cited from the evidence of record. For example, he doesn't mention the positive straight leg raising test was noted by numerous providers in the record and throughout the record, and that shows there's some nerve root irritation. That's what that test shows. There's one finder, Dr. Nicolosi, found abnormal gait, which was not mentioned by the ALJ, sensory loss, reflex changes. So her condition seemed to worsen over time, and the ALJ only mentioned certain findings while ignoring other objective findings. And even in discussing the evidence, the government mentioned Dr. Steiner. The ALJ never mentioned this. What the government said about the limitation to heavy lifting, the ALJ never said anything about this. So the ALJ did not rely on that. And, of course, as you know, you can't come up with looking through the record or find some support that the ALJ never cited in the decision itself to support the finding. So we would contend that the evidence is consistent, that she could not perform light work. That's what the ALJ found. The case should go back to reassess the RFC and to determine whether, in fact, she can do past work or other work.